UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SAILBOAT BAY APARTMENTS, LLC                    CIVIL ACTION

v.                                              NO. 14-2344

UNITED STATES OF AMERICA, ET AL.                SECTION "F"


ORDER AND REASONS

Before the Court are two motions by the defendants, the United States and the United States Army Corps of Engineers: (1) motion to dismiss the property damage and negligence claims for lack of subject matter jurisdiction; and (2) motion for summary judgment as to the trespass claim.  For the reasons that follow, the motions are GRANTED.

Background

This case arises from property damage allegedly caused by the poor workmanship and oversight of the United States Army Corps of Engineers in completing the Hurricane & Storm Damage Risk Reduction System at the Lakefront levee around the 17th Street Canal.  Some of the work occurred at or near the Sailboat Bay Apartment complex, located at 8600 Pontchartrain Boulevard.  Sailboat Bay has brought claims for negligence, property damage, and trespass resulting from that construction work.

The project included a contract that the Corps awarded to

1

Tetra Tech EC, Inc., for new T-wall and floodgates from the 17th Street Canal to Topaz Street along West Marine Avenue and Lakeshore Drive in the Lakeview area of New Orleans.  The defendants used the plaintiff's parking garage to demolish the existing floodwall adjacent to the apartment complex, along with a ten-foot strip of parking paving adjacent and parallel to the floodwall.  The defendants also demolished the existing drainage underneath the parking lot pavement, and new drainage lines were installed.

Sailboat Bay Apartments holds its property under a lease with the Orleans Levee District (OLD).  In that lease, the OLD reserved some of its right to the property; the parties dispute the extent of the reservation.  Sailboat Bay contends that the OLD retained the rights to only a twelve-foot strip of property, and because the Corps's work crossed that line, the Corps worked outside of its easement with the Corps and trespassed onto Sailboat Bay's property.  The Corps contends that the lease, when viewed in full, contemplates Sailboat Bay's control over its apartment building and the OLD's control over the lands affecting flood-control structures nearby.  The lease states in part:

> This lease also includes the use of that portion of ground measuring approximately twelve (12) feet between equal and parallel lines, located between the leased premises and Lake Avenue for ingress and egress to the herein described and leased premises.  LESSEE herein takes cognizance of the fact that said portion of ground may be used to accommodate the installation of a floodwall in connection with the Hurricane Protection Protect . . . and Lessee's means of ingress and egress shall be over the floodwall, not through it.

The Orleans Levee Board reserves all rights of use within said area for underground servitudes and utilities. . . .

The Orleans Levee Board will have unobstructed access for maintenance and repair to the existing steel sheet pile bulkhead, tie rods and deadmen as well as unobstructed access to any proposed modification to the existing tie rods and deadmen to fulfill its responsibility for the bulkhead. . . .

Whenever, and in connection with the construction or modification of, alternations, repairs, or additions to, or changes in any building or buildings now situated or hereafter erected on land adjoining or adjacent to the leased premises, the consent, approval or permission of lessor is required under any laws, ordinances, rules or regulations of public authorities, lessee shall have the sole right to grant such consent, approval or permission in the same manner and to the same extent as if it were the owner of the leased premises.

The OLD granted the Corps a signed Authorization for and Right of Entry for Access, Construction, Operation, Maintenance, Repair, Rehabilitation, and Replacement.  The Authorization states that the OLD, as the property owner, "grants a partial right of entry to existing Orleans Levee District rights-of-way, servitudes and properties under its jurisdiction."  The OLD attested that it was "vested with sufficient ownership interests in these immovable property interests or rights of use thereof to support the Right of Entry granted," and the grant was "expressly limited to the descriptions of the immovable property interests and their extents, with regard to property descriptions and boundaries, which are owned by the Orleans Levee District."

The Corps's contract with Tetra Tech states that upon completion of the Contractor's work, "rights-of-way furnished by

3

the Government shall be returned to its original condition prior to construction unless otherwise noted."  It also states:

> The Contractor shall be responsible for the preservation of all public and private property, and shall use every precaution necessary to prevent damage thereto.  If any direct or indirect damage is done to public or private property by or on account of any act, omission, neglect, or misconduct in the execution of the work on the part of the Contractor, such property shall be restored by the Contractor, at his expense, to a condition similar or equal to that existing before the damage was done, or he shall make good the damage in another manner acceptable to the Contracting Officer.

The project was completed in summer 2011, and shortly thereafter Tetra Tech began repairing or replacing the damaged portions of the parking lot, building, and concrete wall using drawings that the Corps had produced.  The plaintiff alleges that the replacement plans and the resulting work were grossly inadequate, incomplete, deficient, and defective.

The United States and the Corps contend that this Court lacks subject matter jurisdiction to hear the property damage and negligence claims, because the Federal Tort Claims Act's limited waiver of sovereign immunity does not include acts of independent contractors and discretionary functions.  The plaintiff responds that the independent contractor exception does not apply, because the Corps had daily operational control over the project; Corps approval was required for the Work Plan and placing of pipe and trench drains in the drainage construction.  The plaintiff contends that the Corps's negligent deviation below industry standards in

4

approving the Work Plan does not fall under the independent contractor or discretionary function exceptions.

The United States and Corps also move for summary judgment as to the trespass claim, contending that the Corps had the OLD's consent to be on the property and a valid right-of-use servitude. The plaintiff responds that any servitude granted by the OLD did not extend beyond a narrow strip of property and that the Corps's work exceeded that limitation; it also contends that Corps personnel were seen physically present on the Sailboat Bay property.  In their reply, the United States and the Corps submit that to the extent that there was any physical intrusion beyond the bounds of the servitude, the independent contractor exception bars suit, because any such trespass would have been done by Tetra Tech employees.  The plaintiff has filed a sur-reply in which it submits that the Corps was responsible for obtaining the appropriate rights of entry and access; that the right of entry granted by the OLD did not cover the construction area is the fault of the Corps, not its Contractor.

I.

*A.*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party

5

asserting jurisdiction." Alfonso v. United States, 752 F.3d 622, 625 (5th Cir. 2014) (quoting In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 646 F.3d 185, 189 (5th Cir. 2011) (internal citation and quotation marks omitted)). "As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit.  The district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." Venable v. Louisiana Workers' Comp. Corp., 740 F.3d 937, 941 (5th Cir. 2014) (citations and internal quotations omitted).  The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Spotts v. United States, 613 F.3d 559, 565-66 (5th Cir. 2010) (citation omitted); Ambraco, Inc. v. Clipper Faith MV, 570 F.3d 233, 238 (5th Cir. 2009) (in considering a Rule 12(b)(1) motion to dismiss, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments"), cert. denied, 588 U.S. 1111 (2009).

"[T]he central issue [in deciding a motion to dismiss] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." Gentilello v. Rege, 627

F.3d 540, 544 (5th Cir. 2010) (citation omitted).  To survive a
Rule 12 motion to dismiss, "a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief that
is plausible on its face." Gonzalez v. Kay, 577 F.3d 600, 603 (5th
Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct.
1937, 1949 (2009)) (internal quotation marks omitted).  "A claim
has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct.
at 1949.

*B.*

It is well settled that, as a sovereign state, the United
States is immune from civil suits unless it consents to being sued.
See, e.g., Linkous v. United States, 142 F.3d 271, 275 (5th Cir.
1998); Broussard v. United States, 989 F.2d 171, 174 (5th Cir.
1993); United States v. Mitchell, 455 U.S. 535, 538 (1980).  Thus,
a district court must dismiss a complaint for want of subject
matter jurisdiction whenever the United States has not waived its
sovereign immunity. Broussard, 989 F.2d at 177.  The United States
and the Corps contend that sovereign immunity shields it from
liability as to the property damage and negligence claims.  The
Federal Tort Claims Act contains a limited waiver of sovereign
immunity, but the Government submits that the claims against it
fall within two exceptions to the waiver: (i) the independent

7

contractor exception, and (ii) the discretionary function exception.

*i.*

Under the Federal Tort Claims Act, federal district courts "have exclusive jurisdiction on civil actions on claims against the United States for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his employment . . . ." See 28 U.S.C. § 1346(b)(1). Thus, the FTCA constitutes a limited waiver of sovereign immunity rendering the Government liable for certain torts of federal employees acting within the scope of their employment. United States v. Orleans, 425 U.S. 807, 813 (1976). For purposes of the FTCA, "government employees" include officers and employees of any federal agency, but exclude actions by independent contractors. See 28 U.S.C. § 2671. Accordingly, "since the United States can be sued only to the extent that it has waved its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver." Orleans, 425 U.S. at 814 (citing Dalehite v. United States, 346 U.S. 15, 30-31 (1953)).

A "critical factor" in distinguishing a federal employee from an independent contractor is whether the Government controls "the detailed physical performance of the contractor." Id.; see also

Linkous, 142 F.3d at 275.   The Fifth Circuit has refined this evaluation in concluding that, while "control of the detailed physical performance may be the most critical factor in identifying an employee, it is not necessarily the only factor."   Broussard, 989 F.2d at 175; see also Linkous, 142 F.3d at 275.   Thus, in addition to control, the Fifth Circuit also considers the factors set forth in § 220 of the Restatement (Second) of Agency (1958). Linkous, 142 F.3d at 276.

Pursuant to that analysis, factors suggesting an employee relationship are:

> (1) the work does not require one who is highly educated or skilled; (2) the work is typically done by an employee in the locale, rather than an independent contractor; (3) the employer supplies the tools, instrumentalities, or place of work; (4) the employment is for a considerable period of time with regular hours; (5) the method of payment is by the hour or month; (6) the work is full-time employment by one employer; (7) the work is part of the employer's regular business; and (8) the parties believe they have created an employment relationship.

Linkous, 142 F.3d at 276 n.2 (citing Rodriquez v. Sarabyn, 129 F.3d 760, 765 (citing Restatement (Second) of Agency, § 220(2) & cmt.(h)).

Here, the plaintiff contends that the independent contractor exception does not apply because the Corps had daily operational control at the project site and because the plaintiff's claim is for damage resulting from the Corps's own defective plans and specifications.   The plaintiff invokes the affidavit of Leo

9

Hodgins, Sailboat Bay's owner and manager, who says that Brock Schmidt and William Rossignol, Corps personnel, were present on the property on a daily basis.  The plaintiff also directs the Court to contract language stating that "[b]oth the Government and the Contractor are the construction operators," and construction operators "hav[e] day-to-day operational control."  The "Government" referenced is the Army Corps of Engineers, New Orleans District.[1]

The defendants counter that the presence of Army Corps personnel is entirely consistent with the Corps's quality assurance checks.  Hodgins does not state what, if anything, the Corps personnel were doing on the property or how exactly they exercised daily control over the work.  Sailboat Bay's reliance on the "Storm Water Pollution Prevention Measures" section of the contract that states that the Army Corps had "daily operational control over the

---

[1] The passage reads:

1.4 DEFINITIONS

a. Construction Owner – The construction owner is the party that has operational control over plans and specifications including the ability to make changes to those items.  The New Orleans District (Government) is the construction owner.

b. Construction Operators – The construction operators are the party having control over the plans and specifications and the party having day-to-day operational control over those activities at a project site which are necessary to ensure compliance with the SWPPP or other permit conditions.  Both the Government and the Contractor are the construction operators.

activities at the project site" is misplaced.  The pollution provision–appearing on page 363 of a 708-page contract–does not apply to private-property damage and does not purport to govern contract activities beyond its own limited scope.  The provision, by its own terms, is designed "to control soil erosion and the resulting sediment to the extent necessary to prevent sediment from leaving the contract rights-of-way and prevent pollution of any water body caused by the runoff from the areas of construction activities."  Moreover, even if the provision's scope were broader, it still would not contradict the independent contractor argument, because as "construction owner," the Corps had "operational control over the plans and specifications," not the actual work.  Tetra Tech is listed as a joint "construction operator," because that definition includes the party "having day-to-day operational control over . . . activities at a project site."

The Court finds credence, on the record before it, in the Corps's contentions.  The plaintiff's cherry-picking one provision in an exceedingly long contract does not defeat the independent contractor exception.  The Court has before it no specific allegation as to how the Corps exercised daily operational control over the work, nor is anything of record; the plaintiff, instead, merely relies on nothing but conclusory allegations and speculation.  The contract expressly provided that Tetra Tech had the obligation to ensure that private property was not damaged and

11

to restore any damaged property.  The other Restatement factors also support the application of the independent contractor exception: the parties did not intend to create an employment relationship between the Corps and the Tetra Tech employees; Tetra Tech is in the business of heavy duty commercial construction, requiring a high level of skill; Tetra Tech provided its own machinery, supplies, and manpower; and the Corps paid Tetra Tech a fixed price in periodic installments.  Thus, the Court finds that the independent contractor exception applies, and the federal government has not waived sovereign immunity.

*ii.*

The United States and the Army Corps also contend that the discretionary function exception applies to bar the property damage and negligence claims.  "The provisions of [the FTCA] shall not apply to any claim . . . based upon the exercise or performance . . . [of] a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The "discretionary function exception is thus a form of retained sovereign immunity."  <u>In re World Trade Ctr. Disaster Site Litig.</u>, 521 F.3d 169, 190 (2d Cir. 2008).

*1.*

The plaintiff first asks the Court to deny the defendants' motion without prejudice to allow for further discovery.  The party

seeking discovery bears the burden of showing its necessity. See Sec. & Exch. Comm'n v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980) (holding that in the context of a summary judgment motion, the party seeking discovery "must conclusively justify his entitlement . . . by specifically demonstrating how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing" and "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts") (internal citations and quotations omitted). The party seeking discovery typically meets this burden by alleging the "specific facts crucial to immunity which demonstrate[] a need for discovery." Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 852 (5th Cir. 2000). On the other hand, a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion. See Williamson v. U.S. Dep't of Agric., 815 F.2d 368, 382 (5th Cir. 1987). This is particularly true where the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit; immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery. See Arriba Ltd. v. Petróleos Mexicanos, 962 F.2d 528, 534 (5th Cir. 1992) (observing the "tension between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting

13

a sovereign's or sovereign agency's legitimate claim to immunity from discovery"); cf. Anderson v. Creighton, 483 U.S. 635, 646 n.6, (1987) ("One of the purposes of the [Harlow v. Fitzgerald, 457 U.S. 800, 817 (1982)] qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'"); Williamson, 815 F.2d at 382-83 (affirming stay of discovery where absolute and qualified immunity applied).

Here, the plaintiff asserts only that "discovery is crucial in order to confirm fully and finally who was actually responsible for the Project work." The plaintiff cannot rely on general statements that discovery will produce needed, unspecified facts. Particularly because sovereign immunity is at play, the Court finds that the plaintiff has not carried its burden of showing that discovery is warranted. See Freeman v. United States, 556 F.3d 326, 343 (5th Cir. 2009) ("Congress intended the discretionary function exception to shelter the government from the burdens of answering a lawsuit-including those related to intrusive discovery-not just from potential monetary liability.").

2.

Alternatively, the plaintiff submits that the discretionary function exception does not apply, because the Corps's decision to use substandard plans and specifications in the design of the drainage system and parking lot and to allow the use of improper

14

materials in the construction of the drainage system was not policy based.   The Supreme Court has announced a two-part test for discretionary-function immunity.

First, the conduct must be a "matter of choice for the acting employee." Berkovitz v. United States, 486 U.S. 531, 536 (1988). "The exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'"   United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz, 486 U.S. at 536) (alteration in original).   Thus, "it is the nature of the conduct, rather than the status of the actor that governs whether the exception applies." Id. (internal quotation omitted). If a statute, regulation, or policy leaves it to a federal agency or employee to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary.   See id. at 329.   On the other hand, "[t]he requirement of judgment or choice is not satisfied" and the discretionary function exception does not apply "if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'"   Id. at 322 (quoting Berkovitz, 486 U.S. at 536).

Second, "even 'assuming the challenged conduct involves an element of judgment,'" we must still decide that the "'judgment is of the kind that the discretionary function exception was designed

to shield.'" <u>Id.</u> at 322-23 (quoting <u>Berkovitz</u>, 486 U.S. at 536). "Because the purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,' when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" <u>Id.</u> at 323 (quoting <u>Berkovitz</u>, 486 U.S. at 537). With this understanding, however, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." <u>Id.</u> at 324. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." <u>Id.</u> at 325.

The plaintiff appears to challenge only the second prong of the discretionary function test; it does not identify any mandatory federal statutes, policies, or directives that would require the Corps to adhere to a specific course of action in administering the Contract and ensuring that Tetra Tech's work was not performed negligently. <u>See</u> <u>St. Tammy Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency</u>, 556 F.3d 307, 315 n.3 (5th Cir. 2009) (finding that the plaintiff must invoke jurisdiction by pleading facts that

facially allege matters outside of the discretionary function exception).[2]

As to the second prong, the plaintiff submits that the Corps's action or inaction was not based on considerations of social, economic, or political policy. The Corps, however, contends that the degree to which it monitored its contractor's work is based on policy considerations, such as costs, risks, the scope of the project, the reliability of the contractor, the federal personnel available, and the judgment of the contracting officials. The Court agrees. "Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function." <u>Guile v. United States</u>, 422 F.3d 221, 231 (5th Cir. 2005). The plaintiff's reliance on outdated case law and misguided argument that the Corps's role was more than supervisory is unpersuasive and conflates the discretionary-function and independent-contractor frameworks. The discretionary function exception applies, and the Corps is immune from suit.

## II.

### A.

Federal Rule of Civil Procedure 56 instructs that summary

---

[2] The plaintiff moved for leave to file a sur-reply that addressed this issue. Because the basic elements of the discretionary function exception should have been covered in the original opposition, the Court will not consider this argument raised for the first time in a sur-reply filed on the day before the motion's hearing date.

judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v.

<u>John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); FED. R. CIV. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

*B.*

The United States and the Army Corps move for summary judgment as to the plaintiff's trespass claim. The Corps contends that it had the consent of the OLD to be on the property and a valid right-of-use servitude. The plaintiff counters that the right-of-entry from the OLD applied only to a small portion of the property and that the Corps exceeded that.

Under the FTCA, the United States is liable for tort claims "under circumstances where the United States, if a private person, would be liable to the claimant" under state law. 28 U.S.C. § 1346(b)(1). The Louisiana Civil Code recognizes the tort of trespass under article 2315. <u>Richard v. Richard</u>, 24 So. 3d 292, 296 (La. App. 3 Cir. 2009). "A trespass occurs when there is an unlawful physical invasion of the property or possession of another." <u>Id.</u>  There is no trespass when the landowner gives consent to the presence. <u>Beals v. Griswold</u>, 468 So. 2d 641, 644 (La. App. 4 Cir. 1985). A valid servitude similarly defeats an action for trespass. <u>Palace Props., LLC v. Sizeler Hammond Square Ltd. P'ship</u>, 839 So. 2d 82, 96-97 (La. App. 1 Cir. 2002). Exceeding the rights granted in the servitude can result in

19

liability in tort.  <u>Lejeune Bros. v. Goodrich Petroleum Co., LLC</u>, 981 So. 2d 23 (La. App. 3 Cir. 2007).

Here, Sailboat Bay contends that the Corps performed work outside of the limited area covered by its servitude granted by the OLD, and that this incursion constituted a trespass; the concrete foundation of the parking lot and its drainage system were removed and damaged, and a temporary electric pole was attached to the plaintiff's property; the defendants' equipment ran into the building itself, causing damage to the building and the pipe insulation hanging over the parking garage; green space adjacent to the parking garage was damaged.  None of these areas is within the Right of Entry granted by the OLD, contends the plaintiff.

The Corps responds that Sailboat Bay incorrectly reads the lease between the OLD and Sailboat Bay.  Sailboat Bay's authority to grant a right-of-use servitude applies only to "the construction or modification of, alterations, repairs, or additions to, or changes in any building or buildings now situated or hereafter erected on land adjoining or adjacent to the leased premises."  The OLD did not give a right-of-use servitude for alterations to the apartment building.  Rather, the servitude was for floodwall work outside of the actual Sailboat Bay building structure.  The Corps contends that the lease contemplates Sailboat Bay's control over its apartment building and OLD's control over the lands affecting flood-control structures nearby.

The Corps further submits that Sailboat Bay's only evidence that the work exceeded the physical dimensions of the right-of-use servitude is the unsworn report of an engineer retained for this litigation, and that this statement is not proper summary judgment evidence.  The engineer was not present on the property when the work occurred, has no special expertise in surveying or property matters, and does not explain his conclusion that work exceeded the rights of way provided.  The Corps argues, in the alternative, that if the Court should find a genuine dispute of fact regarding encroachment, the claim should nonetheless be dismissed for lack of subject matter jurisdiction under the independent contractor exception to the FTCA's waiver of sovereign immunity.  Any person trespassing beyond the bounds of the right-of-use servitude would have been acting under the control of Tetra Tech.

The trespass claim cannot survive summary judgment.  The Court finds that the Corps did not trespass on the plaintiff's property to the extent that the servitude granted by the OLD allowed its presence.  The plaintiff admits that if the Corps had stayed within the boundaries of the servitude, there would be no trespass.  As to any purported overstepping, the independent contractor exception applies, because on this record any encroachment and the resulting damage was clearly caused by Tetra Tech.  The Contract between the Corps and Tetra Tech contemplated such damage to private property, and Tetra Tech was responsible for repairs, which it performed.

21

The Corps, again, is not liable for property damage caused by Tetra Tech.

The plaintiff contends for the first time in its sur-reply that the alleged physical presence of Corps employees, Brock Schmidt and William Rossignol, is trespass as a matter of law. Their presence was raised originally only in opposition to the motion to dismiss the property damage and negligence claims; the plaintiff used their physical presence to support its argument that the Corps exercised daily control over the Project site. The plaintiff does not, and cannot, explain why the argument that their presence amounted to trespass was not made its in opposition to the motion for summary judgment. The Court afforded the plaintiff the opportunity to file a sur-reply to respond to the Corps's new arguments about sovereign immunity as to the trespass claim, not to expand the basis of its trespass claim to include the mere physical presence of Corps personnel.[3]  This new argument raised for the first time in a sur-reply will not be considered.  See, e.g., Marbury Law Grp., PLLC v. Carl, 729 F.Supp.2d 78, 83 (D.D.C. 2010) (explaining that a sur-reply, when allowed, "is limited to addressing only new arguments raised for the first time by the opposing party in their reply briefing and not included in the

---

[3] The plaintiff also moved for leave to file a sur-reply as to the motion to dismiss.  That sur-reply, however, did not address any new arguments raised by the Government's reply, and it did not set forth any issues that could not have been briefed in the original opposition.  Thus, leave was denied.

original motion"); <u>Newby v. Enron Corp. (In re Enron Corp. Secs)</u>, 465 F.Supp.2d 687, 691 (S.D. Tex. 2006); <u>Kozak v. Medtronic, Inc.</u>, No. 03-4400, 2006 WL 237000, at *4 (S.D. Tex. Jan. 31, 2006). Moreover, the argument splits hairs and bases liability on harmless conduct.

Accordingly, for the foregoing reasons, IT IS ORDERED that the motion to dismiss the property damage and negligence claims for lack of subject matter jurisdiction, and the motion for summary judgment on the trespass claim are hereby GRANTED.

New Orleans, Louisiana, May 13, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE