UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


SAILBOAT BAY APARTMENTS, LLC                    CIVIL ACTION

v.                                              NO. 14-2344

UNITED STATES OF AMERICA, ET AL.                SECTION "F"


ORDER AND REASONS


Before the Court are three motions: (1) the plaintiff's motion to strike the declaration of John Stanich; (2) the plaintiff's motion for partial summary judgment; and (3) the defendant's motion for summary judgment.  For the reasons that follow, all three motions are GRANTED in part and DENIED in part.

**Background**

This needlessly bloated lawsuit arises out of property damage, trespass, and conversion claims by a property owner against a Corps contractor performing post-Katrina flood protection improvement work.

Sailboat Bay Apartments, LLC sued the United States and its contractor, Tetra Tech EC, Inc. to recover for property damage allegedly caused by the poor workmanship and oversight of the United States Army Corps of Engineers of its contractor in completing the Hurricane & Storm Damage Risk Reduction System at

1

the Lakefront levee around the 17th Street Canal. Some of the work occurred at or near the Sailboat Bay Apartment complex, located at 8600 Pontchartrain Boulevard. Sailboat Bay brought claims for negligence, property damage, conversion, and trespass resulting from that construction work.

The United States Army Corps of Engineers awarded a contract to Tetra Tech EC, Inc. to construct and perform flood wall improvements in New Orleans after Hurricane Katrina. Part of the project involved constructing new T-wall and floodgates from the 17th Street Canal to Topaz Street along West Marine Avenue and Lakeshore Drive in the Lakeview area of New Orleans. Sailboat Bay Apartments is an apartment building situated adjacent and parallel to the work to the floodwall along Lake Marina Drive. Tetra Tech was authorized to work on the flood wall adjacent to Sailboat Bay's property pursuant to an Authorization for and Right of Entry servitude obtained by the Corps from the Orleans Levee District, the lessor of the land upon which Sailboat Bay's property is situated. Sailboat Bay's parking lot is adjacent to 400 feet of flood wall that Tetra Tech demolished and replaced pursuant to its contract with the Corps.

Sailboat has a ground lease through the Orleans Levy District for its property located at 8600 Pontchartrain Boulevard; it leases the ground, but owns everything on the ground, including the

2

apartment building and parking lot.  The lease permitted the District to retain certain rights of way, which were granted to the Corps in connection with flood protection improvements.[1] Sailboat Bay submits that the Corps requested and obtained specific rights of way including RW 107, which shows the existing right of way along the southern and eastern boundaries of the property, as well as the new perpetual floodwall easement along the same property boundaries; both are south of the Sailboat Bay parking lot.

Tetra Tech was not responsible for the engineering design for the project; the Corps provided designs and specifications to Tetra Tech for the project.  Although Tetra Tech performed its work under the Corps's oversight and supervision, Tetra Tech exercised daily control over its employees and subcontractors. In performing the floodwall work, Tetra Tech used the plaintiff's parking garage to demolish the existing floodwall adjacent to the apartment complex, along with a ten-foot strip of parking paving adjacent and parallel

---

[1] The District granted the Corps a signed Authorization for and Right of Entry for Access, Construction, Operation, Maintenance, Repair, Rehabilitation, and Replacement.  The Authorization states that the District, as the property owner, "grants a partial right of entry to existing Orleans Levee District rights-of-way, servitudes and properties under its jurisdiction."  The District attested that it was "vested with sufficient ownership interests in these immovable property interests or rights of use thereof to support the Right of Entry granted," and the grant was "expressly limited to the descriptions of the immovable property interests and their extents, with regard to property descriptions and boundaries, which are owned by the Orleans Levee District."

to the floodwall.  The existing drainage underneath the parking lot pavement was also demolished, and new drainage lines were installed.

Sailboat Bay submits that Tetra Tech removed about 4,000 square feet of the parking lot that Sailboat paid to have poured in 2000.  That Tetra Tech began work in 2009 but did not repour the parking lot until late summer 2011.  That Tetra Tech overtook approximately 30-40% of the parking lot that was not demolished, and used it for its own needs, including staging its equipment, staging its vibration monitoring services, and permitting its employees to park in the parking lot.  Tetra Tech did not vacate Sailboat's property until late 2011 or early 2012.  Tetra Tech failed to obtain permission from Sailboat Bay before stationing its vibration monitoring service on its property, notwithstanding the fact that the specifications required such permission from the property owners.  Sailboat Bay's owner, Leo Hodgins, complained extensively about Tetra Tech's use of its property:  The drawings called for Tetra Tech to line up the traverse joints in the parking area to tie into the existing traverse joints at every fifteen feet; Tetra Tech is said to have failed to properly lay the traverse joints as required by the contract drawings because it laid at least one panel at a distance of 18 feet; Tetra Tech never restriped the parking lot; the parking lot that was removed by Tetra Tech was level, and there was no drastic sloping leading to

4

the trench drains, nor was the concrete unduly elevated in the area between trench drains; Drawing E-809 required Tetra Tech to repair damage to Sailboat's building after the temporary pole was removed.  Continuing:  Tetra Tech never repaired the holes after the temporary pole was removed.  Tetra Tech was obliged to follow the drawings in replacing the drain pipes in accordance with C-306 and RFIs.  C-306 calls for a 10 inch reinforced concrete pipe and a 15 inch reinforced concrete pipe, but Tetra Tech replaced the pipes with 18 and 20 inch pipes; the elevations of the trench drains identified in C-306 do not match the elevations in C-502; the drainage system depicted on C-502 cannot be built as drawn because the math (regarding the slopes, distances, and elevations) is wrong on two of the three components); the slopes exceed 11 percent in some places on the concrete poured by Tetra Tech; the traverse joints, if properly placed, are designed to limit the cracking in the concrete.

The Corps's contract with Tetra Tech states that upon completion of the Contractor's work, "rights-of-way furnished by the Government shall be returned to its original condition prior to construction unless otherwise noted."  The project was completed in summer 2011 and, shortly thereafter, Tetra Tech began repairing or replacing the damaged portions of the parking lot, building, and concrete wall using drawings that the Corps had produced.  Alleging that the replacement plans and the resulting

work were grossly inadequate, incomplete, deficient, and defective, the plaintiff sued first the United States and the United States Army Corps of Engineers, and then amended its complaint to add Tetra Tech EC, Inc. as a defendant.

On May 13, 2015 the Court granted two motions by the United States and United States Army Corps of Engineers: a motion to dismiss the plaintiff's property damage and negligence claims for lack of subject matter jurisdiction and a motion for summary judgment dismissing the plaintiff's trespass claim against the United States and the Corps. The plaintiff moved for an order pursuant to Rule 54(b) certifying the May 13 Order and Reasons as a final judgment, but the motion was denied. Tetra Tech now moves for summary judgment and Sailboat moves for partial summary judgment.

## I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable

6

jury could return a verdict for the non-moving party." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a
factual dispute does not defeat an otherwise properly supported
motion.  See id.  Therefore, "[i]f the evidence is merely
colorable, or is not significantly probative," summary judgment is
appropriate.  Id. at 249-50 (citations omitted).  Summary judgment
is also proper if the party opposing the motion fails to establish
an essential element of his case.  See Celotex Corp. v. Catrett,
477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party
must do more than simply deny the allegations raised by the moving
party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d
646, 649 (5th Cir. 1992).  Rather, he must come forward with
competent evidence, such as affidavits or depositions, to buttress
his claims.  Id.  Hearsay evidence and unsworn documents that
cannot be presented in a form that would be admissible in evidence
at trial do not qualify as competent opposing evidence.  Martin v.
John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir.
1987); Fed. R. Civ. P. 56(c)(2).  "[T]he nonmoving party cannot
defeat summary judgment with conclusory allegations,
unsubstantiated assertions, or only a scintilla of evidence."
Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal
quotation marks and citation omitted).  In deciding whether a fact
issue exists, courts must view the facts and draw reasonable

7

inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

### A.

As a threshold matter, Sailboat Bay moves the Court to strike from the summary judgment record the Declaration of John Stanich, on which Tetra Tech relies in support of its motion for summary judgment.[2]  Sailboat Bay submits that the declaration "contains multiple opinions" even though Stanich is not an expert and his opinions were never disclosed in an expert report.  Tetra Tech counters that Mr. Stanich is not being offered as an expert. Nevertheless, Tetra Tech concedes that certain portions of the declaration state opinions; Tetra Tech urges the Court to consider the opinions contained in paragraphs 19-21 and 23-26 under Rule 701 of the Federal Rules of Evidence given Mr. Stanich's extensive

---

[2] Sailboat Bay filed a motion to strike the Stanich Declaration along with a motion *in limine* to prevent Mr. Stanich from providing opinion testimony during the trial.  As stated in its prior order, the Court reserves ruling until trial on the motion *in limine* aspect of Sailboat Bay's motion.  See Order dated 3/24/16 n.1.

experience in the construction industry.  Sailboat Bay replies that Stanich's sworn statements constitute improper opinion testimony excluded under Rule 701.  Insofar as certain portions of the Stanich Declaration constitute opinion testimony by a lay witness, the Court agrees.

*B.*

When supporting or opposing a motion for summary judgment, the summary judgment process requires that:

> [a]n affidavit or declaration used to support or oppose
> a motion must be made on personal knowledge, set out
> facts that would be admissible in evidence, and show
> that the affiant or declarant is competent to testify on
> the matters stated.

Fed. R. Civ. P. 56(c)(4).  Rule 701 of the Federal Rules of Evidence states:

> If a witness is not testifying as an expert, testimony
> in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's
> testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other
> specialized knowledge within the scope of Rule 702.

To the extent Mr. Stanich's sworn statements appear to be technical or engineering opinions, the Court strikes and disregards those portions of the affidavit for non-compliance with Rule 56(c)(4)'s requirements as well as Rule 701's requirement that testimony in

9

the form of an opinion may not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Mr. Stanich was retained by Tetra Tech to bid on building flood protection systems, he bid on the Topaz Project, and was given the lead job as the Senior Program Manager for the project. He moved to New Orleans and lived less than 100 yards from the project. The Court may consider his fact statements to the extent they are based on his personal knowledge. Insofar as some of Stanich's sworn statements constitute opinions, Sailboat Bay's request to strike the declaration in its entirety is patently overbroad. The Court will disregard those portions of the Stanich declaration that constitute technical or engineering opinions, but will consider those statements that are well within Stanich's personal knowledge as a fact witness. Accordingly, Sailboat Bay's motion to strike is GRANTED in part (as to paragraphs 19-21 and 23-26) and DENIED in part (as to the remaining paragraphs of the Stanich declaration).

## III.

Both Sailboat Bay and Tetra Tech cross-move for summary judgment on the issue of Tetra Tech's immunity. Tetra Tech invokes the government contractor immunity defense as well as Louisiana statutory immunity, contending that the Court should dismiss the plaintiff's claims for defective design and construction of the

parking lot and drainage system  Sailboat Bay submits that Tetra Tech is not eligible for immunity because it failed to comply with the drawings and specifications in various respects, such as when it failed to repair holes it drilled into the property; when it failed to restripe the parking lot in accordance with contract specifications; when it installed different-sized drain pipes from those called for in the drawings.  Sailboat Bay also contends that Tetra Tech is ineligible for immunity to the extent that it was not provided with reasonably precise drawings and failed to warn the Corps.

A. Government Contractor Immunity Defense

Tetra Tech invokes the government contractor immunity defense, which, "'[s]tripped to its essentials,' is fundamentally a claim that '[t]he Government made me do it.'"  In re Katrina Canal Breaches Litig., 620 F.3d 455, 465 (5th Cir. 2010)(citations omitted).  The Supreme Court first recognized the federal government contractor immunity defense to state tort law claims in Boyle v. United Technologies Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).  As the Fifth Circuit has observed:

> The [government-contractor immunity] defense preempts state law to immunize government contractors from liability in spite of the absence of legislation specifically immunizing them.  The rationale for [this defense] flows from two basic principles: "[S]tate tort law is preempted by federal common law in areas of unique

federal interests" and "the procurement of equipment by the United States is such an area."

In re Katrina Canal Breaches Litig., 620 F.3d at 459 (internal citations omitted)(reversing the district court's grant of summary judgment in favor of contractor, and remanding because the Corps contractor was not entitled to government-contractor immunity). The Fifth Circuit reaffirmed that "[t]he only analysis necessary to determine the application and scope of government contractor immunity is the three-step Boyle test." Id. at 461.   Thus, to prevail under this defense, the government contractor has the burden of proving: (1) reasonably precise specifications were approved by the United States; (2) the contractor's equipment or work reasonably conformed with those specifications; and (3) the contractor warned the United States when the contractor has information which the government lacks.  See Boyle, 487 U.S. at 512; see also Trevino v. General Dynamics Corp., 865 F.2d 1474, 1479-81 (5th Cir. 1989).

Notably, "[r]easonably precise specifications for one aspect of a large project do not create an umbrella of protection for an entire project."  In re Katrina Canal Breaches Litig., 620 F.3d at 461.  Accordingly, when faced with a large project in which the plaintiff has voluminous complaints, the Court must examine the feature or method at issue in each claim to determine if the

12

requirement of reasonably precise specifications is met as to each particular feature or method.  See id. (citation omitted).

Here, the parties predictably quarrel over whether the Corps approved reasonably precise specifications relative to certain design features construction methods or omissions; and, if so, whether or not Tetra Tech's implementation complied with those specifications.  Tetra Tech seeks judgment as a matter of law that it is entitled to immunity on the plaintiff's claims regarding defective design and construction of the parking lot and drainage system.  In its cross-motion, Sailboat Bay submits that Tetra Tech has no immunity under the government contractor defense because it failed to comply with the drawings and specifications when it failed to repair drill holes that it had drilled into Sailboat's property; when it failed to replace a portion of Sailboat's parking lot correctly; when it failed to restripe the parking lot in accordance with the contract and specifications; and when it installed different sized drain pipes from that which was called for in the drawings.[3]

---

[3] Alternatively, Sailboat Bay submits that Tetra Tech was not provided with reasonably precise drawings and failed to warn the government.

1.   Defective design and construction of the parking lot and drainage system

Both sides seek summary judgment on the issue of whether Tetra Tech has properly invoked the defense of government contractor immunity on the plaintiff's claims for defective design and construction of the parking lot and drainage system. Summary judgment is patently inappropriate on this record as to the parking lot and drainage system design and construction.[4]

Tetra Tech fails even to support to its motion with the relevant drawings and specifications it submits are reasonably precise. Instead, Tetra Tech submits that these facts satisfy the first element of Boyle: the contract between the Corps and Tetra Tech is approximately 150 pages; Tetra Tech had nothing to do with the engineering design of the project; all its work was inspected by the Corps; all drawings regarding drainage and slope were subject to Corps approval; the resident engineer for the Corps, Billy Rossignol "would have" looked over such drawings; if the pipe size for the drainage is not in the contract, it is the Corps's obligation to make sure the pipe fits; if there was any change to pipe size, it was Mr. Rossignol's responsibility to

---

[4] It might be helpful to observe at this point that the papers reflect one of two possible issues: either the bitterness the parties have demonstrated is unprofessional, or, neither side understands the mandate of Rule 56.  See 28 U.S.C. § 1927.

authorize a different diameter of pipe; if there was a change suggested by Tetra Tech, Mr. Rossignol "would have to authorize it."

Sailboat Bay counters that there were no reasonably precise specifications for the drainage system and that Tetra Tech failed to ask the Corps for clarification. In fact, Sailboat Bay submits that Tetra Tech's own expert, James Danner, suggests that the drawings are in conflict with each other such that the drainage system cannot be built as drawn. Both sides point to their view of technical drawings and technical and other evidence in support of their respective positions.

As for the parking lot, Sailboat Bay submits that C-306 identifies the requirements for the replacement of the concrete that was removed from Sailboat Bay's parking lot:

> 3. Install concrete pavement to grades indicated and slope pavement to match tie into existing pavement. See DWG C401 for typical concrete pavement section.
>
> 4. See DWG U3 for longitudinal traverse joint details and location tie bars. . . .
>
> 8. Provide 4" yellow parking lot stall striping as indicated. Provide three stalls between column lines. Center end stall lines on the center of column line. Locate a 9" wide stall in the center of the opening. Stalls on each side of center stall will vary.

Sailboat Bay submits that because the drainage system was placed too deep, the repoured parking lot is uneven and exceeds the

maximum allowable slope for a concrete parking lot.  Sailboat Bay adds that Tetra Tech failed to comply with the specifications of the contract in repaving the demolished parking lot because it failed to place all traverse joints in accordance with the drawings and specifications; poured the pavement in such a wavy, roller coaster-like fashion that the slopes exceed the "ACI standards;" and failed to stripe the parking lot as required by the contract drawings.  Sailboat Bay also submits that the specifications and drawings were not reasonably precise with regard to the slopes of the concrete because the drawings provided conflicting information concerning the slope and angle of the parking lot.  The Court disregards both sides' inappropriate passion for minutiae . . . the death knell for summary relief.

Neither side is entitled to summary judgment on the issue of Tetra Tech's government contractor immunity defense relative to the plaintiff's claims for defective design and construction of the parking lot and drainage system.  Patent material and disputed fact issues persist regarding not only the degree of precision of the Corps's specifications as to the parking lot replacement and drainage features of the project, but also Tetra Tech's compliance or deviation therefrom.  The parties surely know better.  Factual controversies abound regarding what the Corps drawings called for, what Tetra Tech actually did, and whether any modifications by Tetra Tech were approved by the Corps respecting the construction

16

and design features including such things as pipe size, drain elevation, slope of the concrete,[5] distance and placement of traverse joints. Neither side is close to being entitled to judgment as a matter of law as to Tetra Tech's immunity on these claims.

2.  Failure to repair drill holes

Sailboat Bay seeks summary judgment that Tetra Tech is not entitled to immunity as to the plaintiff's claim that Tetra Tech failed to repair damage to Sailboat Bay's building caused by the temporary electric pole attachment. Drawing E-809 depicts the "ELEVATION OF EAST FACE OF EXISTING SAILBOAT BAY APARTMENT BUILDING" and calls for the attachment of a temporary electric pole to supply temporary electric service during the relocation of the Entergy lines. Notes 8 and 9 to the drawing state:

> 8.  THE TEMPORARY WEATHER-HEADS, CONDUITS, AND BRACKETS ARE TO BE REMOVED BY THE CONTRACTOR.
>
> 9.  THE CONTRACTOR SHALL REPLACE OR REPAIR TO (AS FOUND) CONDITION ANY CMU BLOCKS, WALL BRICKS AND MORTAR JOINTS

---

[5] For example, Sailboat Bay insists without citation to authority that some Corps drawings are in conflict with each other and, therefore, as a matter of law, cannot be considered reasonably precise. Assuming there are conflicting drawings on whether or not "the concrete was to be poured in a wavy fashion" -- and presumably one party or the other will call some witness to assist the jury in determining what is called for by the drawings -- it is not for the Court on summary judgment to resolve the conflict in the drawings and grant summary judgment in favor of the winning drawing. One again, the Court cautions about the instructions of 28 U.S.C. § 1927.

   THAT ARE DAMAGED AS A PART OF PROVIDING THE TEMPORARY
POWER SERVICE.

To support its claim that Tetra Tech failed to repair the holes made to fasten the temporary electric pole, Sailboat Bay submits photographs, which it represents were taken by Sailboat Bay's counsel in 2016 and which "show[] numerous holes along the side of Sailboat's property where the temporary pole is attached and subsequently removed." Sailboat Bay also submits a portion of the deposition testimony of its owner, Leo Hodgins, who testified that the holes were drilled "sometime during the project period" and that during that time a temporary electric pole was attached to the building. Because Tetra Tech failed to repair the holes as required by the specifications, Sailboat Bay submits that the government contractor immunity defense is unavailable to Tetra Tech for this particular claim.

   Countering that Sailboat Bay has failed to submit competent summary judgment evidence that Tetra Tech failed to repair the holes, Tetra Tech contends that the 10 photographs of the alleged holes allegedly caused by the temporary pole have been submitted without a proper foundation. Sailboat Bay fails to suggest who took the photographs or when the photographs were taken (although plaintiff indicates in its summary judgment papers that the photos were taken on January 29, 2016 by its counsel). The Court agrees

that, as submitted, the photographs are incompetent summary
judgment evidence.    Photographs of holes in bricks, without
authenticating context, adds nothing to the summary judgment
record.   Although Sailboat Bay suggests in its reply papers that
Mr. Hodgins authenticated the photographs during his deposition,
the deposition pages and lines cited fall well short of
accomplishing authentication of the photos submitted and marked as
Exhibit 10 to Sailboat Bay's motion for summary judgment.[6]
Undated, unauthenticated photographs of holes in bricks have no
probative value on summary judgment; thus, insofar as Sailboat Bay
seeks summary judgment that Tetra Tech is ineligible for the
government contractor defense as to Sailboat Bay's claim that Tetra
Tech failed to repair holes allegedly drilled in bricks on its
property to hold a utility pole, the motion is denied.

   3.   Failure to restripe parking lot

      Sailboat Bay seeks summary judgment that Tetra Tech is not
entitled to immunity as to the plaintiff's claim that Tetra Tech
failed to comply with the specifications when it failed to restripe
the parking lot.   Drawing C-306 provides specific instructions

----

[6] The portion of the deposition cited indicates that Mr. Hodgins
is identifying photos marked as 1-A and 1-B, but from what it can
tell, the Court is not even provided with photos marked as 1-A or
1-B.   The Court is left to speculate whether 1-A or 1-B, which
were apparently shown to Mr. Hodgins during his deposition, are
any one of the 10 photos contained in Exhibit 10 attached to
Sailboat Bay's motion for summary judgment.

regarding striping the parking lot.  It is undisputed that Tetra Tech failed to restripe the parking lot.  (No doubt, an issue that will captivate the jury).  Tetra Tech counters that it was denied access to restripe the parking lot by Mr. Mora.  In support, Tetra Tech points to Project Engineer Robert Mora's deposition testimony that Sailboat Bay's owner, Leo Hodgins, denied Tetra Tech access to the parking lot such that Tetra Tech could not restripe it. But Sailboat Bay objects to this Court's consideration of Mr. Mora's testimony; the plaintiff insists that Mr. Mora's statement is hearsay because he stated that he heard from Harry Ebraheim that Mr. Hodgins denied access to Tetra Tech.

During his deposition, Mr. Mora stated that he was told by Tetra Tech's project manager, Harry Ebraheim, that Mr. Hodgins denied Tetra Tech access to the parking lot to restripe it. Sailboat Bay concludes that this hearsay statement cannot be considered on summary judgment.  Putting aside whether Mora's hearsay statement is probative of the issue of immunity as to the failure-to-restripe claim, because Tetra Tech has failed to suggest the admissible form that it anticipates offering this hearsay at trial (such as by submitting a declaration by Mr. Ebraheim and advising that Mr. Ebraheim will testify at trial), the Court agrees that it cannot consider Mora's statement as evidence supporting the impossibility of Tetra Tech complying with the specification requiring restriping.

Summary judgment procedure suggests that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).   The accompanying comments clarify the process:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted to the pretrial setting.   The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.   There is no need to make a separate motion to strike.    If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Tetra Tech has failed to suggest how Mr. Mora's hearsay statement can be presented in a form that would be admissible at trial. Because Tetra Tech has not submitted any evidence remotely raising a fact issue regarding its failure to comply with the specification requiring restriping, Sailboat Bay is entitled to judgment as a matter of law that Tetra Tech is thus not entitled to its defense of government contractor immunity with respect to Sailboat Bay's failure-to-restripe claim.

B.   Louisiana Statutory Immunity

Under Louisiana law, a contractor has a duty to third parties "to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations."

21

Lyncker v. Design Eng'g, Inc., 988 So.2d 812, 814 (La. App. 4 Cir. 2008), writ denied, 922 So.2d 1036 (La. 2008).  Notwithstanding this general duty, Louisiana confers statutory immunity on a contractor who follows the plans and specifications of another party.  Id.; Cormier v. Honiron Corp., 771 So.2d 193, 197 (La. App. 3 Cir. 2000).

> La.R.S. 9:2771 states:

> No contractor ... shall be liable for destruction or deterioration of or defects in any work constructed or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications.  This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner.  The provisions of this Section shall not be subject to waiver by the contractor.

Tetra Tech submits that it is entitled to statutory contractor immunity for the same reasons it is entitled to government contractor immunity.  And, its motion for summary judgment is denied for the same reasons already explained as to its woefully inept invocation of government contractor immunity.

IV.

Both Tetra Tech and Sailboat Bay move for summary judgment on the issue of whether Tetra Tech exceeded the servitude or right-

22

of-way granted to the Corps by the District.  Sailboat Bay submits
that there is no genuine dispute that Tetra Tech was not authorized
to work on or occupy any of Sailboat Bay's property that was
located north of the boundaries identified in RW-107 such that
Sailboat Bay is entitled to judgment as a matter of law that Tetra
Tech exceeded the applicable right-of-way and is liable for
conversion and trespass.  Sailboat Bay submits that Tetra Tech
exceeded the right-of-way when it demolished a portion of
Sailboat's parking lot, when it staged its vibration monitoring
service on Sailboat's remaining property, in using the parking lot
as a staging area for its materials and equipment, and in
permitting its employees to park on Sailboat's property.  Because
Sailboat owned the parking lot that was removed and misused by
Tetra Tech, and the misuse was inconsistent with the plaintiff's
right of ownership, the misuse constituted conversion and trespass
for which Tetra Tech is liable.

Tetra Tech submits that Sailboat Bay cannot carry its burden
of proof on its trespass claim, and that the plaintiff has no cause
of action for improper taking or loss of use of its property.

A.  Conversion

Under Louisiana law, conversion applies only to moveable
property.  Conversion of a movable or a chattel occurs when:

23

> 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel. . . . The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation.

Dual Drilling Co. v. Mills Equip. Invs., Inc., 721 So. 2d 853, 857 (La. 1998)(citation omitted); accord MCI Commc'ns Servs., Inc. v. Hagan, 74 So. 3d 1148, 1154 n.8 (La. 2011).

It is undisputed that Sailboat Bay's cause of action for exceeding the right-of-way relates to immovable property: a parking lot on an apartment complex/building. The plaintiff is not entitled to judgment as a matter of law on its conversion claim. A claim for the conversion of immovable property is, at best, frivolous.

B. Trespass

The Louisiana Civil Code recognizes the tort of trespass under article 2315. Richard v. Richard, 24 So. 3d 292, 296 (La. App. 3 Cir. 2009). "A trespass occurs when there is an unlawful physical invasion of the property or possession of another." Id. There is no trespass when the landowner gives consent to the presence. Beals v. Griswold, 468 So. 2d 641, 644 (La. App. 4 Cir. 1985). A

24

valid servitude similarly defeats an action for trespass.  Palace Props., LLC v. Sizeler Hammond Square Ltd. P'ship, 839 So. 2d 82, 96-97 (La. App. 1 Cir. 2002).  Exceeding the rights granted in the servitude can result in liability in tort.  Lejeune Bros. v. Goodrich Petroleum Co., LLC, 981 So. 2d 23 (La. App. 3 Cir. 2007).

Neither side carries its summary judgment burden on Sailboat Bay's trespass claim.  Triable issues remain.

The record suggests that the right-of-way applicable to the Sailboat property is reflected in RW 107, which shows the right-of-way along the southern and eastern boundaries of the property, as well as the new perpetual floodwall easement along the same property boundaries.  It is undisputed that both are south of the Sailboat Bay parking lot.  Sailboat Bay accordingly submits that the record shows that Tetra Tech was unauthorized to work or occupy any of Sailboat Bay's property that was located north of the boundaries identified in RW 107.  In spite of this evident restriction, Sailboat Bay submits Tetra Tech demolished or damaged the entire southern portion of Sailboat Bay's parking lot; used other portions of Sailboat Bay's property for staging and for stationing its vibration monitoring service; and allowed its

employees to park their vehicles.[7]  All north of the right-of-way granted.

Even assuming that Mr. Hodgins' testimony is credible and sufficient to prove that Tetra Tech employees parked and otherwise trespassed on the Sailboat Bay property "pretty much every day" during the project,[8] Sailboat Bay concedes that as plaintiff it must also show whether the physical invasion was unlawful and whether or not the trespasser was in good or bad faith, along with damages.  Having failed to brief these issues and submit any evidence supporting them, Sailboat Bay falls well short of demonstrating entitlement to judgment as a matter of law on its trespass claim.

But the hostile point-counterpoint continues. Tetra Tech seeks summary judgment in its favor on Sailboat Bay's trespass claim, and its motion also fails.  Tetra Tech merely submits that Mr. Hodgins's testimony falls short of proving trespass because he has no expertise in surveying such that he could opine on whether the technical limits of the servitude were exceeded.  Had Tetra

---

[7] In support of these contentions, Sailboat Bay relies solely on the deposition testimony of its owner, Leo Hodgins.  He testified that he saw people working on the project parking and trespassing on his property "pretty much every day."

[8] Tetra Tech does no more than deny the allegations raised by Sailboat Bay on this point.

Tech submitted evidence in support of its contention, it at best has raised a material fact issue.[9]

Nevertheless, and despite the nonstop shortcomings of parties' papers, the Court has serious concerns regarding the litigation risk of Sailboat Bay's claims, in particular its trespass claim and the proper measure of damages, if any, as to each of its claims.[10]  The parties will be required to brief all legal and damages issues concerning Sailboat Bay's trespass and other claims prior to trial.

V.

A.  Damage to Building Façade

Tetra Tech seeks summary judgment on the plaintiff's claim that Tetra Tech's negligence caused physical damage to the building.  Once again, either unprofessional hostility or an unfamiliarity with Rule 56 carry the day.  Tetra Tech argues in

---

[9] Tetra Tech at once submits that it would have been impossible for it to carry out the Corps's plan for the floodwall project if RW 107 is an accurate representation of the right of way over Sailboat's property.  But it also suggests that it did not exceed the right of way applicable to Sailboat's property in carrying out its work.  It points to Mr. Mora's testimony that he did not see Tetra Tech "parking . . . up to the second column."

[10] Tetra Tech does not in its moving paper challenge whether Sailboat Bay can prove any damages from the alleged trespass.  Accordingly, the Court is ill-equipped to consider the issue *sua sponte*.

conclusory fashion that the plaintiff has no evidence that damage to the façade of the building was caused by Tetra Tech.  The plaintiff counters that its claim for physical damage to the building and insulation is corroborated by Tetra Tech's own photographs as well as Hodgins' testimony that there was no damage to the façade of the building prior to Tetra Tech occupying the space and placing and using its machinery and heavy equipment. The plaintiff points to Mr. Hodgins' testimony that a "big chunk" of concrete was missing from part of the building during the time that Tetra Tech was working and had its equipment near the building.  In replies and sur-replies, the parties' dispute morphs to focus an issue of whether damage to the façade pre-existed Tetra Tech's work.  The summary judgment record at best reveals factual conflicts regarding the condition of the property before Tetra Tech performed work, the condition of the property while Tetra Tech worked, and the condition of the property after its work was concluded.  Certainly, the plaintiff is charged with proving its claims to the trier of fact, but Tetra Tech is not entitled to judgment as a matter of law by simply raising an issue of fact concerning causation.[11]

---

[11] Again, the summary judgment record is replete with photographic "evidence," including close-ups for alleged damage without even any context as to what the photo depicts or when it was taken; a proper foundation must be laid before introducing such evidence at trial.

B.   Physical Damage to Property

Insofar as the plaintiff seeks partial summary judgment on its "physical damage to property" negligence claims, the Court observes that this obligatory catch-all in the plaintiff's motion appears to include those categories of damage that the Court already addressed in considering the parties' arguments on Tetra Tech's immunity defense.  The Court will not repeat its analysis here.  Suffice it to say that the plaintiff's cursory and afterthought argument on various items of "physical damage to property" is insufficient to demonstrate judgment as a matter of law on these varied claims.

C.  Failure to Rebuild Wall and Replace Landscaping

Tetra Tech submits that it is entitled to summary judgment dismissing the plaintiff's claim that Tetra Tech failed to properly rebuild an 8-foot wall as well as the plaintiff's claim that Tetra Tech failed to replace landscaping removed from the area between the southern edge of the parking lot and the floodwall.  The plaintiff withdraws these claims[12] and, therefore, these claims will be dismissed.

---

[12] Sailboat Bay submits that it has learned that the 8-foot wall was not part of Sailboat Bay's property and that Sailboat Bay's trees were removed by someone on behalf of the Corps prior to Tetra Tech's award of the contract.  One wonders why this enlightening information comes so late.

* * *

Accordingly, IT IS ORDERED: that the plaintiff's motion to strike the Stanich declaration is GRANTED in part and DENIED in part;[13] the defendant's motion for summary judgment is GRANTED in part (as to the plaintiff's claims for the defendant's failure to rebuild the wall, failure to replace landscaping, and conversion) and DENIED in part (as to its entitlement to immunity and the plaintiff's claims for damage to the building façade and trespass); and the plaintiff's motion for partial summary judgment is GRANTED in part (as to the defendant's immunity on the plaintiff's failure to restripe the parking lot claim) and DENIED in part (as to the defendant's immunity on the plaintiff's other claims and as to the plaintiff's trespass claim).  The plaintiff's conversion claim, along with its failure to rebuild wall and failure to replace landscaping claims, are hereby dismissed.  IT IS FURTHER ORDERED: that, given the last minute briefing addressing which prescription period should control the plaintiff's claims, and the fact-driven and claim-specific nature of the inquiry, the Court finds summary judgment premature as to prescription.  Once this issue is thoroughly briefed for trial, the Court will rule on which of plaintiff's claims, if any, have prescribed, or may defer until

---

[13] As the Court stated in its prior Order dated March 24, 206, it defers ruling until trial on the motion *in limine* aspect of the motion to strike.

the record is developed as necessary.[14]   Finally, the Court is obliged to remind and once more to underscore to all counsel of the mandate of 28 U.S.C. § 1927.[15]

New Orleans, Louisiana, April 6, 2016

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[14] See Estate of Patout v. City of New Iberia, 738 So. 2d 544, 554 n.9 (La. 1999)("a determination of whether damage was inflicted 'for public purposes'" for the purposes of determining the applicable prescription period "can be made prior to trial, after a hearing on the issue of prescription, just as it might also be deferred until after trial.").

[15] Perhaps counsel are distracted by the enmity in this case, but failure to recognize the high litigation risk both sides face in this case would be a professional lapse by all.